EDMUND J. BAKER & others *vs.* ELEANOR J. W. BAKER & others.

The word " descendants," in a will, cannot be construed to include any but lineal heirs, without clear indications, in the will, of the testator's intent to extend its meaning.

A testator devised and bequeathed all his property to trustees, and directed them to pay certain debts and legacies, to allow his wife and son the income of certain real estate for life, and to advance a certain sum and lend certain apparatus to W., who had been employed in the testator's business, to be used in that business, he paying the testator's son one quarter of the net profits, so long as the son should not be concerned in similar business, and if the son should break this condition, then this sum to fall into the residue of the estate; and further directed that the income of his property, after fulfilling the above provisions, " and as the same shall fall in from time to time by the termination of life or otherwise, and also the principal of said residue," should be disposed of as follows: One third of the income to his wife for life, one third to his son for life, and the remaining third to his daughter for life; at the death of the wife, " one half of the third of said income to which she would be entitled, if living," to the son, if surviving, and the other half to the daughter, if surviving; at the death of the daughter, " the proportion of said property, of which she was entitled to the income, shall go to her descendants, in such manner as the same, if her property as a feme sole, would descend or be distributed according to law;" and upon the death of the wife, if she should survive the daughter, one half of the third of the principal, of which she was entitled to the income, to go to the descendants of the daughter in like manner; and if, at the time when the descendants of the daughter, if any, would be entitled to any of the principal, there should be no such descendants, then it should go to the son's descendants; and added similar provisions as to the son and his descendants; and provided that if, at the time of the termination of the trust for the payment over of the income of the whole or part of the property, there should be no descendants then surviving of the son or daughter, then such whole or part should go to certain charitable institutions. *Held,* that upon the death of W., the sum advanced and the apparatus lent to him were to be added to the residue of the estate; and that, upon the death of the daughter, without issue, in the lifetime of her mother and brother, one third of the residuary fund should be paid to the children of the brother at that time, and their issue.

THIS CASE was argued in writing at a former term by *J. M. Churchill,* for the plaintiffs, *E. D. Sohier & C. A. Welch,* for Eleanor J. W. Baker, *W. Richardson,* for Walter Baker, and *E. L. Pierce,* for Florence M. Baker.

SHAW, C. J.    This is a suit in equity, brought by Edmund J. Baker, John H. Robinson and Jonathan French, trustees under the will of Walter Baker, late of Dorchester, who died on the 6th of April 1852, and whose will was duly proved and allowed, against Eleanor J. W. Baker, his widow, Walter Baker, his son, and Florence Mott Baker, a minor, granddaughter of the deceased, and daughter of his son Walter, and also the trustees of

9 *

of the Massachusetts General Hospital, and the trustees of the State Reform School at Westborough.

The bill sets forth a certain article in the will, including a residuary clause, after various other devises and bequests not affecting the present question, which residuary provision directed the trustees to dispose of a considerable amount of property, for the benefit of·his wife, Eleanor J. W. Baker, his son, Walter Baker, and his daughter, Edith Baker, all of whom survived him. The article in question is as follows:

" Article ninth. The rents, interest and income of all the residue of my property remaining after fulfilling the above and subsequent provisions, and as the same shall fall in from time to time by the termination of life or otherwise, and also the principal of said residue, shall be disposed of as follows, viz.: One third of such rents, interest and income shall be payable (semi-annually or quarterly as may be convenient) to my said wife Eleanor J. W. Baker, during her life ; one third of the same to my said son Walter Baker during his life ; and, the remaining third to my daughter Edith Baker, on the receipt of her guardian during her minority, and on her own separate receipt after her majority or marriage, dated on or after the end of each quarter or half year as the same may be payable, and independently of any husband she may have, during her life.

" At the decease of my said wife, one half of the third of said income to which she would be entitled, if living, shall be paid to my said son Walter during his life, if he survives her, and the other half shall be paid to my said daughter Edith during her life, if she shall survive my said wife, in the same manner as above provided for the payment of income to her.

" At the decease of my said son Walter, the proportion of said property, of which he was entitled to the income, shall go to his then surviving descendants, in such manner as the same, if his property, would descend or be distributed according to law. In case my said wife shall survive my said son, then at her death one half of the said one third of the principal, of which she was entitled to the income, shall go to the descendants of my said son in like manner.

" At the decease of my said daughter Edith, the proportion of said property, of which she was entitled to the income, shall go to her descendants, in such manner as the same, if her property as a feme sole, would descend or be distributed according to law. And in case my said wife shall survive my said daughter, then at her death one half of the said one third of the principal, of which she was entitled to the income, shall go to the descendants of my said daughter in like manner.

" If, at the time when the descendants of the said Walter, if any, would be entitled to any of said principal, there should be no such descendants, then the same shall go to the descendants of said Edith, if any, then surviving. And if at the time when the descendants of said Edith, if any, would be entitled to any of said principal, there should be no such descendants, then the same shall go to the descendants of said Walter.

" If, at the time of the termination of the trust for the payment over of the income of the whole or any part of said property, there should be no descendants then surviving of the said Walter or Edith, then the whole or part of said property on which the trust shall have so terminated shall go to and be equally divided between the Massachusetts General Hospital and the Massachusetts State Reform School at Westborough."

The bill then, after averring that the trustees accepted said trust and were duly commissioned as such, alleges that the testator left said Eleanor, his widow, Walter Baker, a son of full age by a former marriage, and Edith, an infant daughter of himself and said Eleanor, and no other children or issue ; that said Walter, the son, had a lawful child born on the 5th of August 1852, named Florence Mott Baker, who still survives, but has no other child ; that on the 21st of July 1853 Edith, the daughter, died, leaving no issue, but leaving numerous collateral kindred, both on the paternal and maternal side.

The plaintiffs then, after setting forth various facts in detail in relation to the property of the testator, and alleging that they have property on which this residuary article of the will may operate, state that they are desirous of distributing, paying over and disposing of the same, according to the true and legal effect

of said will, and their duty in the execution of the same; but that various and conflicting claims are made to said property or parts thereof, by the said Eleanor J. W. Baker, by the said Walter Baker, by said Florence Mott Baker, infant daughter of said Walter; and that other claims may be made thereon by other children of said Walter, who may be afterwards born, and also by the trustees of the Massachusetts General Hospital and the trustees of the State Reform School at Westborough. They then aver that they are in great doubt as to their power and duty in the premises, and pray for the instructions of the court.

The answer of Eleanor J. W. Baker admits most of the facts as stated, and admits that said Edith died unmarried and without issue; but insists that she left a half brother, to wit, said Walter, and a mother, to wit, herself, and claims that the property ought to be divided between them, and denies all claims of any others conflicting with this claim.

The answer of Walter Baker admits all the facts stated in the early part of the bill; and after stating his claim under the will, in his own right, to one third of the income of the residue of the real and personal estate, as stated by the plaintiffs, further claims and contends, that he, said Walter, is entitled to have paid to him, under said will, the principal of one half of the other third, to the income of which said Edith, deceased, was entitled by the will; also the income accrued on said half, not paid over to said Edith's guardian, before her decease, as well as the income accrued since her decease; and does not deny the claim of said Eleanor to the other half.

Further answering, he makes a specific claim to the benefit of the $15,000 directed by his father to be advanced to Sidney B. Williams to carry on the chocolate business, of the profits of which this defendant was to have one quarter. He claims to have the whole $15,000 paid over to him, or to have it invested, and the income paid over to him, with the income accrued since the death of said Williams. And he avers that he has never violated any condition of the will, or forfeited or impaired his special claim to this $15,000. He makes the same claim to the

pans, moulds and apparatus used in the chocolate business. And he denies all claims of any parties to this suit, conflicting with his said claims, and prays the court to protect his rights and interests.

Florence Mott Baker, in her answer, claims all the rights in the real and personal property of her grandfather, Walter Baker, deceased, of her aunt, Edith Baker, deceased, by virtue of said will, which the plaintiffs in their bill state that she claims, and such other rights as the court shall find just and lawful, and leaves the plaintiffs to make proof of all facts alleged, which may be to her disadvantage. She denies the respective claims of her codefendants, Eleanor J. W. Baker, and her father, Walter Baker; contends that other issue of her father, hereafter to be born, will not be entitled to any of the property set forth; and prays that, if any of the codefendants shall be found to be entitled to the income of any of said property, the principal may be safely invested for her sole benefit, to become hers absolutely and exclusively on the decease of the party entitled to the benefit of the income thereof. She further says that she is an infant of three years old, and submits, reserving all benefits.

It is necessary, in order to put a right construction upon the ninth article of this will, directing the ultimate disposition of both income and principal of the property, to consider the whole scheme of the will, and to ascertain from it, if practicable, the true intent and purpose of the testator, in order to understand each provision.

In the first place, he devises and bequeathes his whole property, real and personal, with one exception, in the broadest terms, to executors and trustees after named, their successors, heirs and assigns, for the purposes, and subject to provisions and directions, thereinafter expressed.

As the property is given to the executors and trustees, and they are not all of them the same persons, the widow being an executor but not a trustee, and French being a trustee but not an executor, although two are the same, there might be some ambiguity as to the vesting of the legal estate, though no question is raised upon this subject. The trustees sue, and they

aver that they have been duly commissioned by the probate court, and this is admitted. We suppose the effect of such a gift, if any question were made, would vest the property in the first instance in the executors; and after they have appropriated enough of the property to pay debts and legacies, and enable them to perform all the duties of executors, the residue would vest in the trustees.

The effect of making a will in this form is, to make no legal devise or bequest, except to the trustees; but the effect of all the provisions for the widow, children and all other beneficiaries under the will, is to create equitable interests only, according to the directions given; and the gift to the trustees is an absolute devise in fee of the real estate, and an absolute gift of the personal, large enough to feed and nourish all the trusts created by the will. Whether this consideration would make any difference in construing words and clauses usually employed to create legal devises and bequests, when used as declarations of trust, designed to enlighten and direct the understanding and consciences of trustees, in administering trust property, may be doubtful; perhaps not precisely the same legal technical terms should be required, as in creating legal estates and interests.

One difference, we suppose, is obvious; that where clauses in a will, providing for various events, might create contingent remainders, which would be in danger of failing from the want of proper particular estates to support them, up to the time of the happening of the contingency, such danger would be avoided by such a will as the present, where the fee is all along vested in the trustees, for the purpose, among other things, of meeting all such contingencies as they may happen.

We are then to take a general view of the will, construing all the provisions, after the first article, as declarations of trust.

Article 2 directs the payment of debts; and article 3 gives a large amount of personal property, furniture, &c., notes and money to the wife, to her absolute use and disposal. The next clause gives her real estate in Dorchester for her natural life, without restrictions. The remaining part of the same article gives her mills and other real estate, for life, subject to cer-

tain provisions. Article 4 directs the trustees to allow his son Walter the use, rents and profits of mills and other real estate, described, for life. In neither of these cases is any special direction given, in terms, as to the equitable reversions expectant upon the termination of these life estates, to the widow and son.

The residue of article 4, together with article 5, contains directions about carrying on the chocolate business, under Sidney B. Williams, then in the testator's employ, on a share of the profits; and the general effect of these directions is, that the trustees are to advance him $15,000, and, if necessary, more capital; and that he is to have, at a fixed rent, the exclusive use of the mills and apparatus for making Baker's chocolate, and to use his name, allowing his son Walter one quarter part of the profits, in case he shall not carry on the same business, or suffer his name to be used in carrying it on.

Article 6 directs, that if his son Walter should die leaving a widow, the trustees should pay her, or purchase for her an annuity of $1,200.

Article 7 is erased. Article 8 directs donations in money to Bible and Missionary societies.

Article 9 provides for the disposition of the income and principal of the residue, upon which the question in this case arises. We shall recur to this presently.

Article 10 gives full power to the trustees to sell, convey, mortgage or pledge any property, real or personal, with the approbation of the judge of probate.

Article 11 gives certain pecuniary legacies.

In article 12 he directs the trustees, that his son Walter shall have the letting, management and control of estates in Dorchester, of which he is entitled to the income, subject however to the discretion and interposition of said trustees.

Article 13 excepts, out of the devise of the whole property to trustees, certain estate in Ohio. In case his wife should marry again, he then gives the rent of house in Summer street to his daughter Edith, in the same manner as before directed in case of income payable to her.

Article 14 is a nomination of executors and trustees.

We think there are three leading purposes, manifested by the testator, in this will: First, after placing at his wife's use and disposal furniture, carriages and generally the means of maintaining a household establishment, to provide for her a large and liberal income during her life.

Second, to provide an income for his son and daughter during their respective lives, but in no event to vest in them personally any property other than income.

Third, to bring the property ultimately back, after the decease of his son and daughter, into the descending line of his own family, without deduction, except that of the interest and income thereof.

Perhaps no means more effectual could have been adopted to accomplish all these objects, requiring a provision for many and various contingencies, than that of placing the legal estate in trust, and making all the derivative rights thereto equitable interests only.

In coming back to the ninth article, which purports to make a disposition of the entire equitable estate, both income and principal, it becomes necessary first to inquire, what that residue consists of.

The devise to the trustees was of the entire estate, except the Ohio estate, which does not affect the question; then this article is a direction, in the nature of a declaration of trust, in relation to this whole estate. There is no other clause which purports to be a direction for the disposition of the trust estate.

The first line of article 9 declares what this residue shall be composed of, viz.: " the rents, interest and income of all the residue of my property remaining, after fulfilling the above and subsequent provisions, and as the same shall fall in from time to time by the termination of life or otherwise, and also the principal of said residue."

The first inquiry is, what is to be first deducted for fulfilling the above and subsequent provisions of the will, in order to form this residue. This must obviously include all moneys paid for charges and expenses, for debts and pecuniary legacies and

other direct gifts, and all the personal property directed to be given absolutely to the widow, to be at her disposal. Deduct also all the real estate in Dorchester and Boston, the income of which is given to the widow for life, all the real estate given to her for life, subject to conditions, and also all the real estate the income of which is given to Walter for his life, and all money and property set apart for carrying on the chocolate business, until repaid and thus brought back into the trust fund.

Then the actual residue, when the bill was brought, as stated by the plaintiffs, would stand thus:

Real estate not appropriated to any of the above

purposes, valued at . . . . . $ 2,460.00

Personal, not so used . . . . . 25,251.17

To this, we think, must be added the sum advanced to Sidney B. Williams, according to the directions of the will, to enable him to carry on the chocolate business. This was not a gift, but a loan and advance to Williams by the trustees out of the assets, for which he was to be accountable. This business was to be carried on " in case the said Williams shall be ready and so long as he shall continue to be ready to comply with the preceding provisions." This was plainly founded on the personal confidence which the testator had in the skill and prudence of Williams, who was at the time in the employment of the testator on a share of the profits. But the continuance of this business, under these circumstances, depended on the life of Williams, and when he died the business must terminate, and the loan of $15,000 become payable. The advance was made out of the trust fund, and when repaid would come back into that fund; indeed, as money or as a debt due, this sum was all along a part of the residue; but so long as it was used as capital it was not a part of the trust fund, yielding interest.

Upon a comparison of dates, it appears that Edith died on the 21st of August 1853. It is stated in Walter Baker's answer, and we suppose it is true, that Sidney B. Williams survived and carried on the business, upon the terms specified in the will, by the aid of the $15,000 so advanced to him by the

trustees, until the 2d of July 1854, when he deceased, after which the said $15,000 was repaid to the trustees and became part of the fund. But the same dates show that at the time of Edith's decease this $15,000 was not a part of the fund of which Edith was receiving the income, and therefore was not a part of the principal, to be divided and distributed at Edith's decease. It was, for the time being, loaned without interest to Williams, in consideration of his carrying on the business, and allowing and paying one quarter of the profits thereof to the testator's son Walter. The same considerations apply to the moulds, pans and apparatus lent to Williams.

We may as well say here, as anywhere else, that the claim of Walter, the son, to be entitled to these two last mentioned sums, or to the income of them, because, whilst Williams carried on the business, he, Walter, was to have a share of the profits, is not well founded. That was a share of the profits of the business, and must necessarily cease, when the business ceased. Besides, that share of one quarter profits seemed intended as a compensation to Walter for relinquishing a right, which he would otherwise have had, to carry on the chocolate business, and so to secure to Williams exclusively the enjoyment of the good will and good name of Baker's chocolate, supposed, no doubt, to be of value. This was effected by making the receipt of such share of the profits by Walter dependent on a condition that he would not carry on the business, or lend his name to any other person. This restriction ceased with the business, which depended on Williams's life, so that by his decease this restriction on Walter terminated, and left him at liberty to set up the business, if he should choose to do so. There is no inti- mation in the will that Walter was to have any other right or interest in this sum of $15,000, except as one quarter of the profits of the business; and that having ceased, we think this sum falls into the residue, to be disposed of with it.

Another very important part of this residue, in our judgment, consists of the equitable reversions or remainders expectant upon the termination of the equitable life estates given to the widow, and upon the termination of the life estate given to

Walter. That the testator considered these equitable reversions as constituting an important part of the residue, appears from the words " residue of my property remaining after fulfilling the above and subsequent provisions, and as the same shall fall in from time to time by the termination of life or otherwise." They had fulfilled these conditions in regard to the mansion house in Dorchester and the house in Summer street, by putting the wife in possession, according to the will, to hold for her life. The trustees held the fee of these estates; they fulfilled their duty in appropriating them for the life of the widow, which, upon her death, will terminate, and by the very terms of the will leave the estates to form part of the residue, to be appropriated and disposed of under this article, under the name of " principal of said residue."

Besides, if these equitable reversions are not embraced in this residue, then there is no clause or provision of the will relative to the disposition of them by the trustees, though constituting ultimately a very large part of his estate.

But the court are of opinion that this will did provide for payment out of the income of this residue, and ultimately for the distribution of the principal thereof, and by such distribution for the termination of the said trust. The provisions are somewhat peculiarly expressed, and it is perhaps a little difficult to discern the true and exact meaning, and it requires an attentive and careful examination to ascertain it; but we think, upon such examination, that the meaning will appear intelligible.

We have already suggested, what is apparent by the general scheme, as well as the specific provisions of the will, that the intention of the testator was, that beyond the property given absolutely to the wife, and also to the son, if any, and not coming into this residue in trust, neither wife, son nor daughter should have personally any portion of the principal of this residue, but only certain income therefrom during their lives. Of course, the principal must go elsewhere.

The first clause in article 9 is introductory only, and declares an intent to direct the disposition of the income of all the said residue, and also the principal of said residue; the residue of

said article looks to the various contingencies which may arise, and directs what shall be done on the happening of each of these respectively.

His attention is first drawn to the income; and this he directs to be paid, one third to his wife for life, one third to his son for life, and one third to his daughter for life.

During the joint lives of wife, son and daughter, nothing was to be done by the trustees, but to keep the formed residue well and safely invested, collect the income thereof and pay it, a third each to wife, son and daughter. Their being constituted trustees to hold funds, and pay over the income annually or oftener, implies a duty on their part to keep the funds safely invested in order to raise and pay the income.

The first contingency looked to was the decease of the wife, both the son and daughter being then living. This event, it is manifest, would not only terminate the widow's claim to one third of the income of the formed residue, but would terminate her life estate in the Dorchester and Summer Street estates; thus these equitable reversions would fall into the residue, and the rents and profits serve to swell the income from that residue. Or, to speak more accurately, though these estates all along formed part of the residue, so that the decease of the widow would neither enhance or diminish the principal of such residue, yet it would relieve it from the payment of these rents and profits, which were payable to the wife during her life, and leave the fund by so much the more productive and profitable.

In this contingency, the decease of the wife, he directs that one half of the third of said income, to which she would be entitled, if living, shall be paid to the son, if surviving, and the other half to the daughter. Here then arises some difficulty in ascertaining the testator's meaning. She could not, if living, receive one third of rents and profits of estates, of which, during her life, she was entitled to the whole, simply because she could not survive herself, or be deceased and living at the same time. But this, we think, would be too literal a construction and would not carry out his intent. That intent was to put his whole estate in trust, subject to debts and specific legacies, and

Baker & others *v.* Baker & others.

also to a temporary charge of the rents of a large real estate for the life of his wife, and for her benefit. Subject to these deductions and charges, the whole estate constituted the residue, being the bulk of the estate ultimately intended to go to the lineal descendants of the testator, if any. This he proposed to accomplish, not by giving the property to his son or daughter, but by placing it in trust, to secure to them the income till both or one should die, and for that purpose the whole property was ultimately to constitute the residuum. But this residue might increase or diminish. It might increase by calling in debts or loans, or diminish by losses or bad investments. The testator contemplated that, after all the charges on his estate, and the creation of life interests for temporary purposes, there still would be a residuum; and it appears by the facts, that there was a residuum, both of real and personal estate. In the ultimate and final distribution of this residue, whether larger or smaller, and, as it must be ultimately, much enlarged, by the termination of the equitable life estates to the wife and son, he had directed the income of this residue to be paid to wife, son and daughter, one third each ; when, therefore, he says that, on the decease of his widow, one half of the third payable to her should be paid to the son, and one half of the same third to the daughter, to which the widow would be entitled, if living, he means one half of one third of the general residue to each. The words are descriptive of the income to be divided, which is the same income to which she was entitled by the will, and which she would have continued to receive but for the event of her decease. The result then would be, that as each of these was entitled personally to one third of the whole income before the death of the widow, adding to each half of another third would be giving to the son and daughter one half of such income. This is not only consistent with, but is a construction promotive of the general intent. In no event was the widow to receive any portion of the principal; the provision for her was wholly income. No distribution of the principal was to be made at her decease, if the son and daughter were both living. The previous gift of the income of one third of the residue to Walter and Edith was of

10*

the income of one third of the whole residue, whether increased by the termination of life estates or otherwise; and it is to be presumed that it was the intent of the testator to increase their respective thirds to halves of the same income. And it is manifest from the context, that the trust was to continue, and the property remain in the hands of the trustees, and the income to be collected and paid by them to the son and daughter, during their joint lives. It is only upon the decease of Walter or Edith, that any principal is to be paid out. And again, if this is not the true construction, then no disposition is made of a part of the equitable reversion expectant on the termination of the widow's life estate, because the subsequent clause, authorizing the distribution of the principal, in which Walter and Edith were interested, extends only to principal, of which they respectively were entitled to the income. On this view of this clause we are satisfied that the words " said income to which she [the widow] would be entitled to, if living " do not limit the right of the son and daughter, upon her decease, to a part of the income of the residue, so as to exclude that arising from the termination of her equitable life estate, but include one half of one third of the general income, so as to give to each one half.·

Both of the above directions were made on the contingency, that Walter and Edith respectively should survive. The next contingency contemplated by the will is the decease of Walter or of Edith, and we believe the directions in each case are alike. Take Walter; his death might occur in the lifetime of the widow, or after her decease. The will provides for both branches of the alternative. It is as follows: " At the decease of my said son Walter, the proportion of said property, of which he was entitled to the income, shall go to his then surviving descendants, in such manner as the same, if his property, would descend or be distributed according to law. In case my said wife shall survive my said son, then at her death [death of the wife] one half of the said one third of the principal of which she [the wife] was entitled to the income, shall go to the descendants of my said son in like manner." This embraces both branches of the alternative; but as this contingency has hap-

pened in regard to Edith, it may be better to make what remarks we have to make on the clauses of the will which relate to her.

The provision is thus expressed: " At the decease of my said daughter Edith, the proportion of said property, of which she was entitled to the income, shall go to her descendants." This, of course, looks to Edith's death in the lifetime of her mother, because he says in the next clause: " And in case my said wife shall survive my said daughter, then at her [the wife's] death, one half of the said one third of the principal, of which she was entitled to the income, shall go to the descendants of my said daughter in like manner."

Here we put the same construction on the clause describing the wife's interest in the residue, and hold that it intended one third of the whole residue, as existing after the termination of her life estates, and to which she would be entitled under the foregoing general clause in the will. But in the event of Edith's dying in the lifetime of her mother, then the principal to be paid out is necessarily limited to one third of the actual fund in the hands of the trustees, yielding income.

This is in truth the actual contingency which has happened — the decease of Edith the year after the death of her father, her mother, the widow, then and still surviving. This part of the will is perhaps the only part which, strictly speaking, requires the judicial action of the court at the present time; but it seemed proper, if not necessary, to take a wider view, in order to a satisfactory exposition of this particular provision.

We have said that in this contingency — the death of Edith, during the life of the mother — the amount to be paid out to those who claim in right of Edith must be limited to one third of the actual fund in the hands of the trustees, and cannot include the equitable reversions expectant on the termination of the wife's life estate; because that part of the residue held by the trustees yielded no income, and was not a portion of the principal, of which Edith ever was, or, in the event that happened, ever could be entitled to the income. All the residue of that fund in the hands and under the control of the trustees, capable of yielding

income, must be retained by the trustees, and the interest upon it be collected and paid to the wife and surviving brother, in the same manner as if Edith had not died.    They were entitled to continue to receive their full share of income, which they could not do if any of the principal yielding it were withdrawn.    But paying out that part of the principal, of which Edith, up to the time of her decease, was entitled to the income, would leave the income accruing to the wife and Walter, after Edith's decease, wholly unaffected.    We cannot believe that it was the intent of the testator that any disposition was to be made of these equitable reversions during the life of the widow.    We denominate them equitable reversions; it would be more accurate to say they are parts of the testator's estate, of which the widow receives the whole income during her life.    They cannot, therefore, come under the description of property of which Edith was entitled to the income, nor, at her decease in the life of her mother, be distributed as such.

It may be well to look at the alternative clause of this will, and see how it is further to be executed upon the decease of the widow, in order to ascertain whether the construction adopted will harmonize the various parts and render them symmetrical, so that they will correspond with each other.

Supposing that portion of the actual trust fund, capable of yielding income, consisting of cash, securities or real estate, being one third in her own right, to be now paid out to any one claiming in the right of Edith, being that portion of the principal of which she was entitled to the income, and then her mother should die.    Two things would occur : first, one half of the one third of the residue, consisting of the specific fund, in the hands of the trustees, for Edith or those who will stand in her place, the income of one third of which, till then, went to the widow, will become distributable; and second, the equitable remainders will become estates in possession, capable of being sold to raise money, or conveyed by the trustees to the *cestuis que trust* in execution of the trust, or partitioned.    It appears to us, that this was the period to which the testator looked forward for the disposition and final settlement of one half of his estate

and the closing of the trust in regard to such half, to wit, upon the death of the widow after the death of Edith or Walter, or the death of Edith or Walter after that of the widow, whichever of these contingencies might in fact first happen. And the same seems to us to be true, in regard to the other half; that half of the settlement will be finally completed, and the trust in relation to it closed, after the decease of both the widow and Walter, whichever may die first. The trust, we consider, is to last as long as either of the three live, to collect and divide the income. Should the mother die first, still the trust is to continue, to collect and pay over the income between Walter and Edith. But upon the death of either Walter or Edith, after the mother, or upon the death of the mother after either of them, then one half of the estate is to be paid out and finally disposed of, the other half yielding the same income to the survivor as before. When both have died, after the death of the widow, or upon the death of the widow after the decease of both of them, then the whole is to be paid out, or otherwise conveyed by the trustees, and the trust closed. One half on the death of each; of course, the whole on the death of the survivor.

This view gives significance to the last paragraph in this article, as follows : " If, at the termination of the trust for the payment over of the income of the whole or any part of said property, there should be no descendants then surviving of said Walter or Edith, then the whole, or part of said property, on which the trust shall have so terminated shall go to and be equally divided between the Massachusetts General Hospital and the Massachusetts State Reform School."

Several things are observable upon this clause. We think it looks to the final close of the settlement of the estate by the trustees, designated as the termination of the trust, and that that period or termination of the trust will take effect, as to one half, upon the death of the son or daughter, or wife, whichever may first happen ; and, as to the other half, upon the death of the survivor, and also the wife. Another remark suggested by this clause is, that it directs the disposition of " the whole of said property." It does not now speak of the " residue," or the

" property yielding income," or " in the hands of the trustees," but " the whole property," without any qualification. The reason is obvious ; the equitable life estates both to wife and son, and all temporary appropriations of any part of the estate, for any purpose, will have ceased, and the whole estate is then to be disposed of by the trustees. If the widow should die first, there would be but two periods of distribution of principal, namely, at the death of the son and daughter respectively. If the son or daughter should die first, there may be three periods of distribution, one at the death of each son or daughter, and another at the decease of the widow.

In the event which has happened, therefore, the decease of Edith in the lifetime of the widow, an account must be taken of all the property held by the trustees for the purposes of investment, and yielding income at the time of the decease of Edith, excluding, of course, that part assigned to the wife for life and to the son for his life, for of that they were respectively entitled to the income ; excluding also the money lent out of the fund to Williams, as capital for carrying on the business — it being then employed by him — and also the moulds, pans and apparatus ; excluding, also, all other property, if any, specially appropriated by the will, so that it was not, at the time of Edith's decease, part of the general residue yielding income.

Upon the amount being thus ascertained, we think it will be a case for a decree for the payment of one third thereof to the party entitled by the will; who that party is, is the subject for the remaining inquiry, to which we proceed.

The clause in the will upon which this question arises, is as follows : " At the decease of my said daughter Edith, the proportion of property, of which she was entitled to the income, shall go to her descendants, in such manner as the same, if her property as a feme sole, would descend or be distributed according to law."

It is insisted on the part of the mother and half brother of Edith, that the word " descendants " is used synonymously with " heirs," and therefore that this direction to the trustees vests the equitable property in them, as her heirs at law.

Baker & others *v.* Baker & others.

The court are of opinion that this proposition is untenable. The question is, how the testator understood this term, and in what sense he used it. The verb " descend " is sometimes used in the sense of " pass by descent or inheritance," or " be inher ited by." It is so used in our statute of descents, apparently to express by a single term, what might otherwise require a circumlocution. Rev. Sts. *c.* 61, §§ 1, 3. But when so used, it is usually accompanied by other words, which prevent all ambiguity. These phrases are, " shall descend to his father," " to his mother," to " his next of kin," which may be in the ascending or collateral line, as well as the descending; but in these cases these terms so qualify the word " descend," as to give the effect of " pass by inheritance " to the person named or described. We are aware of no authority, that either in a direct gift by will, or in a declaration of trust to the descendants of a person named, such bequest or declaration of trust would be construed to include, as a *descriptio personarum*, the heirs general of such person, including ancestors and collaterals. There must be very clear indications in other parts of the will that it was so intended by the testator, to warrant such a construction. Here it seems clear, we think, from other parts of the will, that it was not so intended ; but was intended, according to the natural meaning of the terms, to limit the ultimate disposition to his own issue, if there should be any coming within the description.

The words " in such manner as the same, if her property as a feme sole, would descend or be distributed according to law," do not, in our opinion, alter the construction. Having directed that it should go to " descendants," which would include lineal heirs to the remotest degree, this clause directed how these descendants should take, as children, grandchildren, &c., and directed that it should be according to law, that is, by right of representation. Had it been intended to go to such persons as would take from her by descent, according to law, it would lead to a very different conclusion ; and if such was the intent, it was so easy and natural to express it, that the failure to do so leads to the conclusion that it was not so intended. He first fixes the class of relatives who are to take, and then

the manner of taking. We think therefore, that "descendants" was a term used in its natural and ordinary sense, as a definite description of all those persons living at a particular time, who can trace their origin, immediately or remotely, to such person, as an ancestor.

Again; the next clause creates equitable cross remainders between the descendants of Edith and the descendants of Walter, in these words: " And if, at the time when the descendants of said Edith, if any, would be entitled to any of said principal, there should be no such descendants, then the same shall go to the descendants of Walter." And there is a similar gift over to the descendants of Edith, if Walter should die first without descendants. Now, as it is certain that one of the two must die first, and leave the other surviving, that other would be an heir at law of the deceased; and if " heirs at law " and " descendants " are intended in the will to mean the same thing, then, upon the construction contended for, such survivor must take by force of the very clause, which directs it to be given over, because there is no one answering the description to take the direct gift; in other words, it supposes an impossible case, which seems to be absurd.

Besides, the word " descendants " must be used in the same sense in the two clauses, by the first of which the proportion of the property, of which the brother and sister respectively took the income, shall, on the death of the first, go to the descendants of the decedent, if any, and by the other of which, if the decedent has no descendant, then to the descendants of the other, if any, whether such other be living or dead. Now a deceased person may have heirs, and a gift to the heirs of a person deceased, as a *descriptio personarum*, would be good, because they may be ascertained ; but a living person can have no heirs, and a gift to persons so described would be void for uncertainty. The word being used in the same sense in both clauses, it could not be used as synonymous with " heirs " in the gift over, and therefore it could not be so used in the direct gift.

But although a living person cannot have heirs, he may have descendants, including all his issue; and who are the descend-

ants of a living person, at a particular time, is a fact susceptible of proof; and a gift to a class, by that description, is certain and valid, and the persons can be ascertained and identified by that description.

But it is argued that this could not have been the intent of the testator, because it might operate inequitably, by giving a large amount to a single child of Walter, without any provision for letting in after-born children.

If we are right in the construction of this will, in holding that upon the decease either of Walter or Edith, whether in the lifetime of the wife or after, there is to be a payment or distribution in part of the residue held in trust, it may follow, that in the event which has happened, the death of Edith in the lifetime of her mother, Florence Mott, the only child of Walter, will take the share now to be paid out, to the exclusion of after-born children. This may result from the rule, that when money is finally to be paid over and distributed, it will go to those who answer the description at the time when the gift takes effect by the happening of any contingency, though, if it were to happen at another time, there may be others answering the description. So, in the present case, the construction that we put on the will being, that on the death of Edith, living her mother, one distribution is to be made, and that upon the decease of the mother another distribution will be made, of that of which Edith, if living, would receive the income, it will go to the children of Walter, then living, including Florence, if she survive, because they would be persons answering the description, at the time fixed by the will for the distribution.

In considering this probable inequality among descendants of the testator, as bearing upon his probable intent, we must look at it under all the lights in which he saw it. In the first place, the direct gift to the descendants must embrace all the children, because even a posthumous child must be a descendant, no other could be born afterwards. Again; if, at the decease of one without issue, the other had died, leaving children, it must go to all of those who then survive. Again; until the decease of the widow, the large amount of the property assigned to her for

life-would not be included in any distribution, on the decease of Walter or Edith. It was only in the remote contingency, which has happened, the decease of Edith in the life of her mother, leaving no issue, her brother surviving and having one child living, and in a position where, by possibility, there may be after-born children, that this inequality could arise, even in regard to the part of the property now distributable, and it cannot be presumed that such remote possibility could change the purpose of the testator. Besides, a leading purpose of the testator was, after providing amply for his widow, son and daughter for their entire lives, to bring the bulk of the estate back again into the line of his own family, as it should exist after the decease of his son and daughter, if there should be any such lineal descendants ; and if this favorite object could be accomplished, we may reasonably conclude, that it was of less importance to him, how the property should be shared amongst those lineal descendants. We do not see how such a possible inequality could have been avoided without keeping this trust open and the estate unsettled during the entire lives of the son and daughter, which, young as they were, would have been extremely inconvenient and unreasonable. From such a possible inequality, therefore, had it been distinctly foreseen by the testator, we cannot infer that he had a different intent from that indicated by the plain and natural construction of the various parts of the will.

In weighing this claim of the mother and brother of Edith to the share of the principal now distributable on her decease, it must be understood that they claim under and by force of the gift to her descendants, and as such descendants ; and not on the ground that this share is not disposed of by the will, and so is claimed by them as heirs at law, and as of property undisposed of by the will ; it is in this view we have considered their claims. But had they claimed on the other ground, as property not disposed of by the will, it must have been equally unavailing the legal estate was in the trustees, the direction was to pay it, in case of Edith's decease, to her descendants, if any, and if none, to the descendants of Walter. If the mother and sister were not the descendants of Edith, within the meaning of the

will, so as to take under the first gift over, then the second gift over is a good declaration of trust, it clearly designates the descendants of Walter, Florence Mott is such descendant, and is entitled to the share payable by the trustees at Edith's decease, with the interest which has since accrued on it, computed at the rate which the fund has earned.

In regard to the sum actually due to Edith at the time of her decease, for interest, in strictness we suppose it must be paid to an administrator, it having become her personal property, and being a *chose in action*, and thus going to her personal representative. But as such a child could owe no debts, and as the mother and son were her heirs at law, alone beneficially interested in this small sum, it probably may be adjusted by mutual consent, without being formally embraced in the decree.

Having, as we believe, considered all the questions necessary to be considered in this case, the counsel for the trustees will draw up and present a decretal order of reference to a master, conformably to the grounds and principles hereinbefore stated, to be submitted to the court; and upon such reference all further orders will be reserved until the coming in of the report